UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERRELL ELEBY,

                              Plaintiff,

                                                                    DECISION AND ORDER

                                                                        08-CV-6420L

                      v.

DONALD SELSKY
as Director of Special Housing
Inmate Disciplinary Program,

                              Defendant.
_____

        Plaintiff, Terrell Eleby, appearing *pro se*, commenced this action pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), asserts a claim against Donald Selsky, who at the time of the relevant events was the DOCS Director of Special Housing/Inmate Disciplinary Program, arising out of certain events that occurred during 2007 and 2008, while plaintiff was confined at Elmira Correctional Facility ("Elmira").

        Defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, defendant's motion is granted.

## BACKGROUND

On January 29, 2007, plaintiff was ordered to submit to a urinalysis test. Three days later, he was issued a misbehavior report charging him with use of a controlled substance, based on the results of that test, which allegedly tested positive for marijuana. Dkt. #1 at 14.

Following a disciplinary hearing, plaintiff was found guilty, and sentenced to one year's confinement in the Special Housing Unit ("SHU"), plus additional loss of good time and privileges. Dkt. #1 at 21.

Plaintiff filed a DOCS administrative appeal, and Selsky affirmed the hearing officer's decision. Dkt. #1 at 24. Plaintiff then filed an Article 78 proceeding in state court. Dkt. #1 at 26-28.

On March 24, 2008, Selsky's successor, Norman Bezio, issued a decision reversing the hearing officer's decision. Dkt. #1 at 41. Bezio did not give any specific reasons for that decision, other than his statement that it was "[p]ursuant to a discussion with the Attorney General's Office ... ." Dkt. #1 at 42. Apparently on motion by DOCS, the state court then dismissed plaintiff's Article 78 petition as moot on June 26, 2008. Dkt. # 1 at 33-34. By that time, plaintiff had served his entire SHU confinement, which began on January 29, 2007. Dkt. #1 at 21.

Plaintiff commenced this action in September 2008. He asserts three causes of action. The first alleges that plaintiff's due process rights were violated at his disciplinary hearing, that Selsky knew or should have known of those violations, and that Selsky "should have ... reversed" the hearing officer's finding of guilt. Complaint ¶ 42.

Plaintiff's second cause of action alleges that "it is the regular policy and practice of DOCS to dismiss and expunge the record of most inmates that brings [sic] suit under Article 78, showing a clear violation of the laws, rules, and/or regulations of the State of New York." Complaint ¶ 48. Plaintiff's third cause of action alleges that on June 18, 2008, he was terminated from his job at the Elmira barber shop, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

**DISCUSSION**

Defendant alleges, first, that plaintiff's constitutional rights were not violated at the disciplinary hearing in the first place. Therefore, defendant argues, there is no basis upon which Selsky can be held liable. *See Black v. Selsky*, 15 F.Supp.2d 311, 318 (W.D.N.Y. 1998) ("because Black's claims against Ryan are meritless and Selsky's alleged wrongdoing was based on his affirming Ryan's determination, there is no basis for the claims against Selsky either").

Plaintiff alleges that his rights were violated in several respects at the disciplinary hearing. He alleges that the hearing officer denied plaintiff's requests to call certain witnesses, as well as his request for certain documents.

Although a New York inmate has a due process right to call witnesses, see 7 N.Y.C.R.R. § 254.5(b), that right is not absolute. *See Ponte v. Real*, 471 U.S. 491, 495 (1985); Wolff v. McDonnell, 418 U.S. 539, 566 (1974). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal

or undermine authority ... ." *Ponte*, 471 U.S. at 496 (quoting *Wolff*, 418 U.S. 566). A hearing officer may also refuse to call a witness "on the basis of irrelevance or lack of necessity." *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991); *see also Scott v. Kelly*, 962 F.2d 145, 146-47 (2d Cir. 1992) ("It is well settled that an official may refuse to call witnesses as long as the refusal is justifiable").

Prison hearing officers, then, have the discretion to keep hearings within reasonable limits, and included within that discretion is the authority to refuse to call witnesses whose testimony the prison official reasonably regards as duplicative or non-probative. *Russell v. Selsky*, 35 F.3d 55, 55-59 (2d Cir. 1994). At the same time, however, "prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify ... ." *Ponte*, 471 U.S. at 497. They need not give a detailed explanation, however, and "may do so ... by making the explanation a part of the 'administrative record' in the disciplinary proceeding ... ." *Id.*

In addition, to establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing. *See Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) (stating that "it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial"); *Clark v. Dannheim*, 590 F.Supp.2d 426, 429-31 (W.D.N.Y. 2008) ("[t]o establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing").

In the case at bar, the hearing officer denied plaintiff's request to call a confidential informant on the ground that the informant's testimony would be irrelevant to the issue of plaintiff's guilt on the charge against him, in other words, whether plaintiff had accurately tested positive for marijuana. Dkt. #11 at 121. That denial was entirely proper. *See Scott v. Gardner*, 287 F.Supp.2d 477, 496 (S.D.N.Y. 2003) (dismissing inmate's claim that hearing officer violated his rights by refusing to consider inmate's defense that he was improperly ordered to submit a urine sample).

Plaintiff also objected that he was not allowed to call a pharmacologist. A pharmacist employed at Elmira did testify, however, *see* Dkt. #11 at 108-10, as did a senior technical specialist for CIBA, the manufacturer of the unit that was used to conduct plaintiff's drug test. *Id.* at 114-15. Plaintiff has not shown how he was prejudiced in any way by the lack of testimony of a pharmacologist.

Plaintiff further contends that his rights were violated because he was denied certain documents that he had requested concerning the testing device. Again, plaintiff has failed to show that he was prejudiced by the denial of those documents, in other words, that the hearing result would have been different had he been given access to those documents. *See Clark*, 590 F.Supp.2d at 429 (dismissing state prisoner's due process claim based on hearing officer's denial of plaintiff's requests to review certain medical records, and to call DOCS sergeant as a witness, where plaintiff failed to demonstrate that he was prejudiced by those refusals); *Proctor v. Kelly*, No. 9:05-CV-0692, 2008 WL 5243925, at *22 (N.D.N.Y. Dec. 16, 2008) ("The Second Circuit has specifically held that prison disciplinary hearings are subject to a harmless error analysis") (citing *Powell*, 953 F.2d at 750); *Marino v. Humphrey*, No.05 CIV. 6571, 2006 WL 2786182, at *5 (S.D.N.Y. Sept. 27, 2006)

(stating that "[h]armless error analysis applies to prison disciplinary hearings" and that "[c]ourts may find harmless error where a prisoner fails to show that the error negatively affected the outcome of the proceeding").

Furthermore, the case law in this area suggests that prison inmates have no general constitutional right to documents relating to drug testing procedures, and that hearing officers may rely on drug test results to support a finding of guilt. *See Henson v. United States Bureau of Prisons*, 213 F.3d 897, 898-99 (5th Cir. 2000); *Spence v. Farrier*, 807 F.2d 753, 755-57 (8th Cir. 1986). *See also Mathie v. Goord*, 267 Fed.Appx. 13 (2d Cir. 2008) (agreeing with district court that there was no merit to prisoner's claim that DOCS procedures governing inmate urinalysis drug testing were unconstitutional because DOCS destroys urine samples after testing them and prohibits inmates from obtaining independent test results at their own expense); *Rivera v. Wohlrab*, 232 F.Supp.2d 117, 124 (S.D.N.Y. 2002) (alleged improprieties in urinalysis procedure and documentation did not render the results of inmate's drug test impermissible at his disciplinary hearing, since hearing officer was entitled to conclude that test results were valid).

Although plaintiff asserts, in conclusory fashion, several other claimed violations of his rights, all those claims are unsupported by the evidence, and require little discussion. As with the claims discussed above, plaintiff has not shown that he was prejudiced by any of the claimed errors. In addition, even if plaintiff could show a deviation from procedures called for under state law or DOCS regulations (though I make no finding in that regard), "[f]ederal constitutional standards rather than state law define the requirements of procedural due process." *Shell v. Brzezniak*, 365

F.Supp.2d 362, 376 (W.D.N.Y. 2005) (internal quotation marks omitted). Plaintiff has not shown that any constitutional violations occurred.

In addition, to the extent that plaintiff claims that there was insufficient evidence to support the hearing officer's determination, that claim is meritless as well. To pass constitutional muster, it is only necessary that a prison hearing officer's disposition be "supported by 'some evidence.'" *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (quoting *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)). The hearing officer's finding in the case at bar more than meets that standard.

Thus, plaintiff cannot show that his constitutional rights were violated during the disciplinary proceedings or hearing. Selsky's affirmance of the hearing officer's decision therefore cannot give rise to a § 1983 claim. *See Loving v. Selsky*, No. 07-CV-6393, 2009 WL 87452, at *4 (W.D.N.Y. Jan. 12, 2009).

Bezio's later reversal of that decision likewise does not provide a valid basis for a constitutional claim. For one thing, Selsky–the only defendant in this case–had no involvement in that reversal. *See Rivera v. Fischer*, 655 F.Supp.2d 235, 237-38 (W.D.N.Y. 2009) (discussing personal involvement requirement in § 1983 cases). Second, plaintiff's assertion that the reason for the reversal was that DOCS was afraid that plaintiff was going to prevail in his Article 78 proceeding is entirely speculative and, even if true, does not establish a violation of his federal constitutional rights, absent some underlying constitutional violation, which plaintiff has failed to show.

Finally, plaintiff's claim that he was terminated from his barber shop job in violation of the ADA must be dismissed because there is no evidence that Selsky was in any way involved in that termination. *Id.* Plaintiff's ADA claim is therefore dismissed as well.

**CONCLUSION**

Defendant's motion for summary judgment (Dkt. #7) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
February 8, 2010.